UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

VIRGINIA RIENHARDT (Now known as
VIRGINIA FURTADO)

        Plaintiff,

     v.                         **REPORT AND RECOMMENDATION**
                                      **08-CV-1159 (TJM)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

Plaintiff Virginia Rienhardt (now known as Virginia Furtado) brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds that the Commissioner's decision contains legal error and is not supported by substantial evidence. Therefore, the Court recommends that Plaintiff's Motion for Judgment on the Pleadings be granted in part

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated August 14, 2009.

and Defendant's Cross-Motion for Judgment on the Pleadings be denied.[2]

## II.   Background

Plaintiff applied for both DIB and SSI on May 24, 2006, alleging an onset date of

August 1, 2003 (R. at 50, 314).[3] Plaintiff alleges disability due to a back impairment,

obesity, and depression. Her applications were denied initially on August 23, 2006 (R. at

31). Plaintiff filed a request for a hearing on October 8, 2006 (R. at 37).

On December 4, 2007, Plaintiff appeared before the ALJ (R. at 324).The ALJ

considered the case *de novo* and, on March 28, 2008, issued a decision finding Plaintiff

not disabled (R. at 19-27). The ALJ's decision became the Commissioner's final

decision in this case when the Appeals Council denied Plaintiff's request for review on

October 17, 2008 (R. at 7-10). On October 28, 2008, Plaintiff filed this action.

Based on the entire record, the Court recommends remand because the ALJ

erred in applying the treating physician rule.

## III.   Discussion

### A.   Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v.

Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817

---

[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[3] Citations to the underlying administrative record are designated as "R."

F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

   "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation process[4] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

---

[4] The five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

4

B.     Analysis

1.  The Commissioner's Decision

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the insured status requirements of the Act through December 31, 2008 (R. at 21); (2) Plaintiff had not engaged in substantial gainful activity since August 1, 2003, Plaintiff's alleged onset date (R. at 21); (3) Plaintiff's degenerative joint disease of the back and depressive disorder were severe impairments (R. at 21); (4) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I (R. at 23); (5) Plaintiff

> ha[d] the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1556(b) and 416.967(b). She c[ould] occasionally climb, balance, stoop, kneel, crouch, and crawl. She c[ould] understand, remember and perform simple tasks and some more complex tasks, maintain attention and concentration for tasks, learn new tasks, make appropriate decisions and interact with others

(R. at 24); (6) Plaintiff's "statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with the residual functional capacity" ("RFC") (R. at 26); (7) Plaintiff had past relevant work as a switch board operator (R. at 27); (8) Based on the RFC, Plaintiff can perform her past work as a switch board operator, both as Plaintiff actually performed it and as it was generally performed in the national economy (R. at 27). Ultimately, the ALJ found that Plaintiff was not under a disability at any time through the date of his decision (R. at 27).

5

### 2.  Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and contrary to the applicable legal standards. Specifically, Plaintiff argues that a) the ALJ erred in applying the treating physician rule; b) the ALJ erred in applying the special technique analysis; c) the ALJ's erred in failing to discuss or evaluate Dr. Altmansberger's opinions in the mental RFC; and d) the ALJ erred in failing to find that Plaintiff's obesity was a severe impairment.

### a)  The ALJ Erred in Applying the Treating Physician Rule to the opinions of Dr. Kristin M. Graves

Plaintiff argues that the ALJ erred in applying the treating physician rule when evaluating the opinions from Plaintiff's treating physician, Dr. Kristin M. Graves. Plaintiff's Brief, pp. 15-18.

On December 22, 2007, Dr. Graves completed a medical source statement concerning both Plaintiff's physical and mental impairments (R. at 304-09). In that form, Dr. Graves indicated that she began treating Plaintiff in August 2005 (R. at 304). However, Dr. Graves failed to supply, what appears to be, approximately two years of treatment notes. The ALJ afforded Dr. Graves' assessment "little weight" because she "did not submit any treatment notes to support her assessment  . . . [and] it is based solely on the claimant's subjective remarks" (R. at 26).

According to the "treating physician's rule,"[5] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

---

[5] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).  "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand."  Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court.  See de Roman, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

The Court finds that the ALJ erred in applying the treating physician rule for two reasons. First, the Second Circuit has found that a treating physician's reliance on a claimant's "subjective complaints hardly undermines his opinion as to her functional limitations, as '[a] patient's report of complaints, or history, is an essential diagnostic tool.'" Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003) (quoting Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997)). Thus, the ALJ erred in discounting Dr. Graves' opinions because she relied on Plaintiff's subjective complaints. See McCarty v.

Astrue, 2008 WL 3884357, at *6 (Aug. 18, 2008 N.D.N.Y.) (a treating physician's

"reliance on Plaintiff's subjective complaints is not a valid basis for rejecting his opinion

      The ALJ has an affirmative duty to develop the record.  Echevarria v. Sec'y of

Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982). This duty exists regardless

of whether Plaintiff has counsel or is continuing *pro se*. Perez v. Chater, 77 F.3d 41, 47

(2d Cir. 1996). Here, ALJ discounted Dr. Graves' opinions because she failed to submit

treatment notes along with her assessment (R. at 26). However, these missing

treatment notes constitute a gap in the record. The ALJ erred in his duty to develop the

record by failing to attempt to fill that gap by re-contacting Dr. Graves. See Dickson v.

Astrue, 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008) (citations omitted) ("The

duty to develop the record is 'particularly important' when obtaining information from a

claimant's treating physician due to the 'treating physician' provisions in the

regulations."); Longbardi v. Astrue, 2009 WL 50140 at *26 (S.D.N.Y. Jan. 7, 2009)

(citations omitted) (finding "a 'clear gap' in the record" where a treating physician

"indicated that he examine[d] plaintiff every two months, [but] his progress notes skip

from sometime in 2003 to September 27, 2004"); see also 20 C.F.R. § 404.1512(e)(1)

(re-contact is required if the report from a treating physician "does not contain all the

necessary information . . . . We may do this by requesting copies of your medical

source's records, a new report, or a more detailed report from your medical source ").

Thus, the missing treatment notes were not a valid basis for the ALJ to deny controlling

weight but instead highlighted the ALJ's failure to fully develop the record. ").

      Based on the foregoing, the Court recommends remand to allow the ALJ to re-

contact Dr. Graves in an attempt to obtain her treatment notes as well as to re-evaluate

the weight to grant Dr. Graves' opinions.

**b) The ALJ Must Necessarily Re-Evaluate the Severity of Plaintiff's Mental Impairment**

While unclear, Plaintiff's argument could be read to contend that the ALJ erred in applying the special technique analysis.[6] Plaintiff's Brief, pp. 14-15.

The ALJ's application of the special technique, as well as his ultimate finding that Plaintiff's depressive disorder constituted a severe impairment, is supported by substantial evidence and free of legal error. However, as the Court has previously recommended remand, the ALJ must necessarily re-evaluate the severity of Plaintiff's mental impairment through application of the special technique.

If the impairment is mental, the ALJ must incorporate a "special technique" in his written decision to determine to determine the severity of a mental impairment. 20 C.F.R. §§ 404.1520a(a); 416.920a(a). The special technique encompasses four areas: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3). These four areas are then rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416.920a(c)(4). If an individual's impairment results in none or mild for the first three categories and none in the fourth, a finding of non-severe is generally appropriate. 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1).

The ALJ found that Plaintiff had a mild restriction of daily living activities (R. at 23). The ALJ based this decision, in part, on the Social Security Administration ("SSA") reviewing psychiatrist, Dr. Richard Altmansberger (R. at 23). Dr. Altmansberger found

---

[6] Plaintiff uses the term "psychiatric review technique." Plaintiff's Brief, p. 14. Based on the law cited to by Plaintiff, the Court assumes Plaintiff was in fact arguing a failure to properly apply the special technique analysis. Id.; 20 C.F.R. §§ 404.1520a, 416.920a.

that Plaintiff had mild difficulties in this category (R. at 23, 267). The ALJ also noted that Plaintiff "reported a full range of activities of daily living including household chores and personal care. She reported that she spent her days doing chores, using her computer, talking on the phone and watching television" (R. at 23) (citations omitted).

The ALJ then determined that Plaintiff had mild difficulties in social functioning (R. at 24). In making this determination, the ALJ considered Dr. Dennis Noia's[7] finding that Plaintiff "demonstrated adequate social skills" (R. at 24). The ALJ also noted Plaintiff's statement to Dr. Noia "that she got along well with friends and family" (R. at 24, 278). Finally, the ALJ considered Dr. Altmansberger's opinion that Plaintiff had mild difficulties in maintaining social functioning (R. at 23, 267).

As for the third category, the ALJ found that Plaintiff experienced moderate difficulties in maintaining concentration, persistence, or pace (R. at 24). This finding is, once again, consistent with Dr. Altmansberger's opinion (R. at 267). The ALJ also considered Dr. Noia's finding that Plaintiff had "moderately impaired memory but had intact attention and concentration" (R. at 24).

Finally, the ALJ concluded that Plaintiff had no episodes of decompensation (R. at 24), based on Dr. Altmansberger's finding that Plaintiff had no episodes of decompensation (R. at 267).

The ALJ's finding of moderate difficulties in maintaining concentration, persistence, or pace is consistent with his determination that Plaintiff was afflicted with a severe mental impairment. 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1) (a finding of

---

[7] Dr. Noia, the SSA consultative psychologist, examined Plaintiff on July 12, 2006 (243-46); and again on September 17, 2006 (275-79). Dr. Noia found that Plaintiff's "manner of relating, social skills, and overall presentation w[ere] adequate" at both examinations (R. at 244, 277).

not severe is generally appropriate if an individual's impairment results in none or mild for the first three categories and none in the fourth). Notably, Plaintiff does not argue that the ALJ's determination of a severe mental impairment was erroneous.

Therefore, the Court can find no error in the ALJ's application of the special technique analysis. However, the Court has previously recommended remand for failure to properly apply the treating physician rule. Thus, on remand, the ALJ must necessarily re-evaluate the severity of Plaintiff's mental impairment through application of the special technique.

### c) The ALJ Must Necessarily Re-Consider Plaintiff's Mental Limitations in the RFC

Plaintiff argues that certain opinions in the mental RFC, completed by Dr. Altmansberger, "should have been, but were not, evaluated or discussed by the ALJ." Plaintiff's Brief, p. 15. Specifically, Plaintiff refers to Dr. Altmansberger's opinions that Plaintiff was moderately limited in various mental functions.

It is clear from the ALJ's decision that he both discussed and evaluated Dr. Altmansberger's opinions. Thus, Plaintiff's argument is without merit. Moreover, although seemingly not argued by Plaintiff, the ALJ's determination to grant Dr. Altmansberger's opinions "little weight" is supported by substantial evidence. However, because the Court has previously recommended remand, the ALJ must necessarily reconsider any limitations resulting from Plaintiff's mental impairment when determining the RFC.

Dr. Altmansberger, the SSA review psychiatrist, completed a mental RFC on August 21, 2006 (R. at 253-55). Dr. Altmansberger found that Plaintiff was moderately

limited in her ability to understand and remember detailed instructions; carry out

detailed instructions; maintain attention and concentration for extended periods; perform

activities within a schedule, maintain regular attendance, and be punctual within

customary tolerances; complete a normal workday and workweek without interruptions

from psychologically based symptoms and to perform at a consistent pace without an

unreasonable number and length of rest periods; travel in unfamiliar places or use

public transportation; and set realistic goals or make plans independently of others (R.

at 254-55).

> The ALJ noted Dr. Altmansberger's opinions that Plaintiff
>
> had [a] moderately limited ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attention and be punctual, complete a normal work day and work week without interruptions from psychologically based symptoms, travel in unfamiliar places or use public transportation and set realistic goals or make plans independently of others

(R. at 25). The ALJ then went on to grant these opinions "little weight" because

"[m]oderate limitations in these areas are not consistent with the evaluations by Dr. Noia

or with the claimant's reported complaints" (R. at 25). Thus, contrary to Plaintiff's

argument, the ALJ both discussed and evaluated Dr. Altmansberger's opinions.

The Court also finds that the ALJ's analysis of Dr. Altmansberger's opinions and

the granting of little weight to his opinions is supported by substantial evidence. As the

ALJ found, several of Dr. Altmansberger's opinions were contradicted by Dr. Noia, the

SSA consultative examining psychologist.

At the request of the SSA, Dr. Noia examined Plaintiff on July 12, 2006 (R. at

243-46); and again on September 17, 2007 (R. at 275-79). At both examinations, Dr.

Noia found that Plaintiff was "capable of maintaining attention and concentration for tasks" (R. at 246, 278). This is inconsistent with Dr. Altmansberger's opinion that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods (R. at 253). Dr. Altmansberger found that Plaintiff was moderately limited in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances (R. at 253). This finding is inconsistent with Dr. Noia's opinion, from both examinations, that Plaintiff "c[ould] regularly attend to a routine and maintain a schedule" (R. at 246, 278-79).

As previously stated, Dr. Noia examined Plaintiff whereas Dr. Altmansberg did not. Thus, where the opinions between the two medical sources differed, the Court can find no error in the ALJ's acceptance of Dr. Noia's opinions. See 20 C.F.R. § 404.1527(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

The ALJ was also correct in finding that Dr. Altmansberger's opinions were inconsistent with Plaintiff's alleged limitations. For example, Dr. Altmansberger found that Plaintiff was moderately limited in her ability to travel in unfamiliar places or use public transportation (R. at 254). At the hearing, the ALJ asked Plaintiff whether she could take a bus to her doctor's office (R. at 327). Although Plaintiff responded "[n]o," she based her inability to take the bus purely on her physical impairments (R. at 327-28). Plaintiff then went on to testify that, instead, she "would probably call what's called a Medicaid Cab" (R. at 328). Thus, Dr. Altmansberger's opinion that Plaintiff was moderately limited in her ability to take public transportation was inconsistent with Plaintiff's testimony that she was able to call a "Medicaid Cab."

13

However, due to the ALJ's prior errors in applying the treating physician rule, the Court has recommended remand. Therefore, on remand, the ALJ must necessarily re-evaluate Plaintiff's mental limitations when determining the RFC.

### d) The ALJ Must Consider Whether Plaintiff's Obesity Results in Additional Functional Limitations

Plaintiff argues that the ALJ erred in failing to find that her obesity qualified as a severe impairment. Plaintiff's Brief, 12-14.

Obesity will be found to be "a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s) . . . it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1P, 2000 WL 628049, at *4 (S.S.A.). The ALJ failed to make a finding of whether Plaintiff's obesity was a severe impairment.

Although Plaintiff failed to indicate that she was limited by her obesity at the time of her initial application, her impairment is well documented in the record. For example Dr. Mateen Awan[8] instructed Plaintiff that she needed to lose weight (R. at 222). A treatment note from the Familycare Medical Group indicated that Plaintiff was followed for weight management (R. at 195). Finally, Dr. Graves, Plaintiff's treating physician, diagnosed Plaintiff with obesity (R. at 304). Thus, the ALJ was obligated to consider this impairment in his decision. See 20 C.F.R. § 404.1512(a) ("We will consider only impairment(s) you say you have or about which we receive evidence.").

In his decision, the ALJ noted that Plaintiff was five-feet five and one quarter inches tall and weighed two hundred eighty pounds in November 2005, two hundred sixty-six pounds in July 2006, and two hundred seventy-six pounds in September 2007

---

[8] Dr. Awan was one of many medical sources Plaintiff saw at the Syracuse Community Health Center.

(R. at 22, 23). However, it appears that the ALJ simply recited the medical evidence and failed to analyze whether Plaintiff experienced additional limitations due to her obesity.

The Court acknowledges that the record contains little evidence supporting the contention that Plaintiff's obesity further limited her functioning. However, as Dr. Graves diagnosed Plaintiff with obesity, and her treatment notes are missing from the record, it is possible that further evidence of Plaintiff's obesity and its limiting effect on her functioning will be found in those notes. Moreover, given the statistical dimensions of the Plaintiff, her body mass index (BMI) suggests a severe impairment. Therefore, on remand, the ALJ must consider any limitations resulting from Plaintiff's obesity.

### e) The ALJ's Finding That Plaintiff Could Perform Her Past Work is Necessarily Flawed

Plaintiff argues that the ALJ erred in finding her capable of performing her past work as a switch board operator at step four of the sequential evaluation. Plaintiff's Brief, pp. 18-21. The Court cannot reach whether the ALJ's finding at step four of the sequential analysis is supported by substantial evidence because of the ALJ's previous errors.

## IV.   Conclusion

After carefully examining the administrative record, the Court finds that the ALJ erred in applying the treating physician rule. It is therefore recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge


              Syracuse, New York
DATED:        December 30, 2009

## ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby


**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.


      **ANY OBJECTIONS** to this Report and Recommendation must be filed with the

Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in

accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of

Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an**

**extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v.*

*Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v.*

*Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for

the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


                Syracuse, New York
DATED:          December 30, 2009

17